**Lomas & Nettleton Co.**
**v.**
**Warren**
*[Cite as 4 AOA 476]*

*Case No. 89-G-1519*
*Geauga County, (11th)*
*Decided June 29, 1990*

Dennis Reimer, Dennis Reimer Co., L.P.A., 9806 Ravenna Road, Twinsburg, Ohio 44087, for Plaintiff-Appellant.

Donald J. Huffman, Huffman, Thomas & Massetti, Suite 522, Leader Building, East Sixth & Superior Avenue, Cleveland, Ohio 44114, for Defendant-Appellees.

FORD, J.

This is an appeal from an order denying appellant's motion to obtain payment under the posted supersedeas bond in a prior appeal involving the same parties and subject matter. This matter originated with a complaint in foreclosure filed by appellant, The Lomas & Nettleton Company, the first mortgagee, against appellee, Kurt H. Warren, et al., in April of 1986. Judgment was rendered on December 9, 1986, and the sheriff's sale was scheduled for April 9, 1987 at 10:00 a.m.

Appellee, Jerry J. Zahuranec, was the successful bidder for the property in question at the sheriff's sale and deposited the required amount with the court then. A motion to set aside the sale was sustained by the trial court for the reason that the sale was improper because it began prior to the scheduled 10:00 a.m. starting time.

The trial court's decision was appealed, in our Case No. 1405, Sept. 10, 1987, and a supersedeas bond in the amount of $10,000 was posted in the trial court. The named surety on the bond was Fidelity & Deposit Co. of Maryland. This court affirmed the trial court's decision, and as a result, the property was again sold at a public sale.

Appellant filed a motion to pay the face amount of the supersedeas bond, and a hearing was held on a hearing was held on April 18, 1989. Appellant argued that as a result of the delay caused by the appeal, damages were incurred, and that the purpose of the bond was to protect against such damages. These damages, it contends, included loss of interest and diminution in value incurred during the time interval of that appeal, and that the actual damages exceeded the amount of the bond. Appellant contends that the trial court overruled appellant's motion to pay over the entire amount of the supersedeas bond, based on the briefs of counsel, and that no evidentiary hearing was held nor was any transcript taken. It is from this decision that appellant has timely appealed, raising the following assignment of error:

"The court erred in overruling plaintiff's motion to pay supersedeas bond and in releasing to bond."

The language of R.C. 2505.09 requires a supersedeas bond to be posted to effectuate a stay of execution pending an appeal. App. R. 7(B) uses the word "may" and states that the appellate court may condition relief upon the filing of a bond. The apparent discretion in App. R. 7(B) is in direct conflict with R.C. 2505.09. (It is our position that the language in R.C. 2505.09 may be read to avoid the conflict by stating that the trial court or appellate court may direct that sufficient sureties in certain cases means no sureties.) Section 5(B), Article IV, Ohio Constitution mandates that such conflicts be resolved in upholding the language found in the Appellate Rules of Procedure.

Section 5(B), Article IV, Ohio Constitution requires that the rules promulgated by the Supreme Court shall not abridge, enlarge, or modify substantial rights. Based on that constitutional provision, it appears to this court that the application of the discretionary power contained within App. R. 7(B) by the appellate courts under similar circumstances, for example, when the posting of a bond serves no purpose where no damages are involved, will have no effect upon the substantive rights of the parties. Therefore, we conclude that under such circumstances, it is within the discretion of appellate courts to determine whether or not a stay of execution should be conditioned upon the posting of a bond.

The ability to allow a stay of execution with no other condition, such as the posting of a supersedeas bond, has been analyzed in *Ruther* v. *Sweeney* (1956), 75 Ohio L. Abs. 385, 389 (quoting from *Henderson* v. *James, Warden* 52 Ohio St. 242, 261) as follows:

"* * * the court has ample power to stay the execution of the judgment or final order, and it may grant the stay upon terms as it sees fit, and if in the opinion of the court no other terms than the stay itself are required, the stay must be so granted."

This court finds the logic of *Ruther* and Henderson compelling despite the fact that both cases involved habeas corpus actions and are therefore factually dissimilar. Additional authority for this proposition is found in *Olympia Equipment v. Western Union Telegraph Co.* (C.A. 7, 1986), 786 F. 2d 794, 796, which cites *Federal Prescription Service Inc.* v. *American Pharmaceutical Assn.* (C.A.D.C., 1980), 636 F. 2d 755, and states that while posting a bond entitles an appellant to a stay, the appellant *risks* the stay being denied when no bond is posted. The posting of a supersedeas bond is not mandatory to stay an execution in all cases, and the requirement that a bond be posted based on the factual context in this case should be seriously questioned.

Generally, under the terms of supersedeas bonds, the obligation of the surety to pay is conditioned upon the principal's performance and payment of "all money, costs and damages which may be required of or awarded against" the principal. R.C. 2505.14. If the condition is met, the obligation of the surety is voided. If damages are awarded and the principal does not pay, the surety's obligation to pay under the bond is triggered. The law in Ohio is well settled that "required of or awarded against" without any other specific conditions of payment refers to money judgments against the principal.

*Diechman* v. *Hunt* (1905), 27 Ohio C.C. 836, 837 states:

"No doubt it was within the power of said appellate courts to have rendered judgment against said Hunt for costs, penalties, damages and interest, but defendant in error in such proceedings evidently did not ask said court to render any such judgment, and none having been rendered, we do not see where the bond has been broken.' (interpreting 'required of')' *Shafer* v. *Stein* (1945), 78 Ohio App. 47, 51, states:

"* * * the withholding of the premises for which they have fully paid and to which they have a deed is unusual, embarrassing and aggravating and possibly of a nature for which the law affords no remedy. We have no purpose, however, to take away from the appellants their right to the orderly processes of the law." (interpreting "required of or awarded against.")

Perhaps as in this case, the court in *Shafer, supra,* was faced with a situation in which one of the parties had been damaged, and yet the terms of the bond were not broken. (Appellee attached a copy of the pertinent bond here as an exhibit to its brief in opposition; however, the terms of the bond were not before the trial court in this case and are not part of the record before us.) In the two cases involving these parties, our Geauga App. No. 1405 (Sept. 10, 1987), unreported, and this present appeal, no damages were ever awarded in favor of appellant against appellee. Appellee was not a wrongdoer. Appellee might well be characterized as an innocent bona fide purchaser at a sheriff's sale, attempting to vindicate his rights through the appellate process, whose "wrong" was to argue unsuccessfully in the prior appeal.

*Tuteur* v. *P. & F. Enterprises, Inc.* (1970), 21 Ohio App. 2d 122, 129, commenting on *Shafer,* states:

"* * * the court's philosophy * * * indicates that the supersedeas bond is not employed to penalize appeals." (For other jurisdictions holding the same, see, *In re American President Lines* (C.A.D.C., 1985), 779 F. 2d 714, 718 at fn. 38.)

There are cases which, at first glance, allow damages similar to those which appellant argues for under the bond. While money judgments had been rendered in these cases, the entries were silent as to other unrelated or consequential damages which were subsequently paid under the bond. These unrelated or consequential damages refer to those other than the express damages awarded plus interest and costs. However, these cases are distinguishable based on the terms of the bonds.

For example, *Shaucet* v. *Davis* 1957), 78 Ohio Law Abs. 395, involved an award of $180.00 for restitution entered against Davis, and Davis appealed from the municipal court to the court of common pleas. On review, the court of appeals would have allowed consequential damages to be recovered under the bond if substantial evidence had been presented. Those consequential damages consisted of damages incurred due to a delay in remodeling the premises in question while the appeal was pending. However, the terms of the bond required that the surety "pay all damages suffered * * *."

Thus, the law of contracts governs bonds, and the liability of the surety is determined upon the terms of the bond.

*Ingersoll* v. *Parker* (1856), 6 Ohio St. 501, 504, states:

"In 17 Ohio, 565, (The *State* v. *Medary*, et al.), it is said 'the bond speaks for itself, and the law is that it shall so speak, and that the liability of sureties is limited to *the exact letter* of the bond. Sureties stand upon the words of the bond; and if the words will not make them liable, nothing can.* * *'" (Emphasis in original.)

As previously stated, the terms of a surety bond may render the surety's obligation void if the principal shall pay all money, costs and damages, which may be required of or awarded against him. When there have been no damages awarded, and no breach of the conditions of the supersedeas bond, there is no obligation for payment under bond.

There is also a question here concerning the lack of express notice and/or a joinder in this case of the surety, Fidelity & Deposit Co. of Maryland as a party defendant. Query, is the surety a necessary party to an action on the bond? This issue merits comment by the court at this time.

*Lamon* v. *Speer Hardware Co.* (C.A. 8, 1912), 198 F. 453, 456 states:

"* * * no case has challenged attention where a judgment against sureties on a supersedeas bond without any suit upon it against them, without any notice to the sureties of the contemplated judgment and without express legislative authority to enter it without such notice, has ever been sustained."

The courts of Ohio have "express legislative authority" to render summary judgment against a surety. This legislative authority is expressed in R.C. 2505.20 and App. R. 7.

R.C. 2505.20 states:

"Upon the affirmance of a final order, judgment, or decree by an appellate court, a judgment or order may be entered against the sureties on any supersedeas bond involved when the mandate of affirmance from the appellate court is filed in the trial court or with the administrative officer, agency, board, department, tribunal, commission, or other instrumentality involved."

App. R. 7(B) states:

"(B) Relief available in the court of appeals under this rule may be conditioned upon the filing of a bond *or other appropriate security* in the trial court. If security is given in the form of a bond or stipulation or other undertaking with one or more sureties, *each surety* submits himself to the jurisdiction of the trial court and irrevocably *appoints the clerk of the trial court as his agent upon whom any process affecting his liability on the bond or undertaking may be served.* Subject to the limits of its monetary jurisdiction this liability may be enforced on motion in the trial court without the necessity of an independent action. The motion and such notice of the motion as the trial court prescribes may be served on the clerk of the trial court, *who shall forthwith mail copies to the sureties if their addresses are known.*" (Emphasis added.)

Summary judgment may be rendered against a surety in Ohio, at least when the amount can be readily ascertained from the judgment, i.e. damages, costs and interests. App. R. 7(B) while allowing summary judgment does not do away with the due process requirement that the surety be given legal notice of an action against the bond. Further, when a hearing must be had to determine the amounts, it appears there is some authority for the proposition that the surety must be made a party and have its day in court under certain circumstances.

*Egan* v. *Chicago Great Western RY. Co.* (N.D. Iowa, 1908), 163 F. 344, involved a special appearance by the surety contesting the rendering of summary judgment against it. The court in holding against a surety states:

"Of course, if damages other than the amount of the judgment, with interest and costs, were sought to be recovered against it, which could not be accurately known by the court without an issue and trial in the ordinary way, there would be reason for such a trial to ascertain the amount of such damages, but where it is sought to be held only for the amount of the judgment, interest, and costs, which appear of record, no reason is perceived, [*sic*] other than to postpone the day of payment, why it should not be summarily required to perform its undertaking." *Egan, supra,* at 351.

Appellant's arguments would require a court to hold a hearing to determine the amount of damages. Therefore, the surety would be a necessary party to any such proceeding pursuant to *Diechman* and *Egan, supra,* since no damages were awarded in the underlying companion case by the trial court in favor of appellant. In any event, in this case the lack of legal notice and/or joinder constitutes merely harmless error at best since the surety actually participated in this case. The record here discloses that the surety entered appearance, and thus had actual notice of the proceedings.

Finally, appellant has failed to demonstrate any error on the trial court's behalf. Appellant complains of the denial by the trial court of the opportunity to have an evidential hearing in order to establish its damages, and, thus, its

right to recover against the supersedeas bond. The record fails to disclose the filing of a motion requesting an evidential hearing on appellant's claim for damages, nor any citation of authority that would mandate such a formal hearing.

No transcript of the hearing was transmitted to this court, and possibly the lack of a transcript could be attributed to the fact that no evidential hearing was held. However, this court has no way of determining what occurred because appellant caused no documentary evidence referring to the proceeding to be transmitted to this court. Appellant failed to use the alternative procedures of App. R. 9(c) or (d) to correct the lack of a transcript.

"The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. * * * When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp* v. *Edwards Laboratories* (1980), 61 Ohio St. 2d 197, 199.

For the above reasons, this court finds the appellant's assignment of error to be without merit, and therefore the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and BAIRD, J., sitting by assignment, concur.